# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00543-CR
NO. 03-09-00544-CR

**Andrew Richard Burke III, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT NOS. CR21,825 & CR21,941, HONORABLE ED MAGRE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Andrew Richard Burke, III appeals from the court's revocation of his terms of community supervision. Burke contends that the evidence was legally insufficient to support the revocation. He also contends that the court erred by denying him time credit for successfully completing a substance abuse felony punishment program. We affirm.

Burke pleaded guilty to two counts of driving while intoxicated, third offense (or more). *See* Tex. Penal Code Ann. § 49.04 (West 2003), § 49.09 (West Supp. 2009). He was sentenced to ten years in prison, which was probated, and he was placed on community supervision (probation) for ten years. One of the terms of his community supervision required him, after serving a term of confinement and treatment in a substance abuse facility, to "participate in a drug or alcohol abuse continuum of care treatment plan as developed by the Texas Commission on Alcohol and Drug Abuse, abiding by all rules and regulations of said treatment plan until successfully discharged

by the staff of the care program." Burke was discharged from the continuum of care program for failing to abide by its rules and regulations. The court revoked his community supervision and imposed the sentence of ten years in prison.

We review the revocation of community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). In determining questions regarding sufficiency of the evidence in community supervision revocation cases, the burden of proof is by a preponderance of the evidence. *Id.* We will affirm if the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *Id.* at 764. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking. *Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984).

Burke's probation officer, Michelle Posten, testified that Burke completed his term in his substance abuse felony punishment facility (SAFPF) successfully without any disciplinary problems. He entered that program on June 19, 2008, and was discharged on April 29, 2009. He then went to the Abode Treatment Center near Fort Worth.

Abode's program manager, Sylvia Wagnon, testified that the center assists substance abuse felons with re-entering society. The clients live in the center, but may leave on passes to seek work, perform work, attend probation meetings, or perform other necessary tasks. Clients can also obtain recreation passes for up to 48 hours. She testified that Burke was a 60-day client who entered the program on April 29, 2009, and would have graduated on June 28, 2009. She testified that he completed his required six hours of weekly therapy only in the first week. The remainder of his time his attendance was essentially excused in favor of appointments at the county hospital.

Wagnon testified that Burke had a 48-hour pass to leave the center on the weekend of May 30-31, 2009. She testified that, although he was eligible only for a 24-hour pass, his counselor had approved a 48-hour pass even though it lacked supporting documentation. Burke also had signed a 72-hour pass that had supporting documentation. Based on the 48-hour pass, he should have returned on May 31 at 4 p.m. He returned June 1, at 4 p.m. Wagnon acknowledged that Burke contacted his counselor to request an extension, but testified that only she (Wagnon) can approve extensions. She said that, although his counselor should have told him of that procedure, she did not know if that occurred. Wagnon also testified that, upon his return, Burke tested positive for alcohol—a violation of the center's rules. She said her logbook showed that his breath analysis was positive for alcohol but his urinalysis was negative for other illegal drugs. She recalled that his breath test showed a concentration of .02. Wagnon did not conduct the test herself. Wagnon testified that Burke told her he had just brushed his teeth and rinsed his mouth out with Listerine. As a result of his failing the test, the center stripped him of his freedoms, including leaving on any pass including a work pass. He also was moved from a single room into a room shared with other clients.

Wagnon testified that on June 7, 2009, at 12:30 a.m., a shift supervisor reported that she saw Burke weaving and stumbling down a hall in the center, showing signs of being drunk including smelling of alcohol and slurring his speech. Two empty beer cans were found in another client's backpack that Burke was seen "fiddling in." The next day, a search of his jacket revealed another empty beer can of a similar type. Wagnon said that Burke denied drinking alcohol and any responsibility for the beer. Wagnon described drunkenness and consumption of alcohol

3

as very serious violations of the center's regulations. Burke, however, tested negative on breath and urine tests.

Wagnon decided on June 9, 2009, to discharge him unsuccessfully. Posten, Burke's probation officer, confirmed that she told Burke not to leave the center, that he would be picked up by law enforcement and returned to Milam County. He nevertheless left the center on June 9, 2009.

Tammy McKinney was Burke's primary counselor at Abode. She testified that Burke was compliant with rules, participated in counseling, and did everything required. She approved his 48-hour pass and, after learning from Ruby Byers, the outpatient coordinator, that Burke wanted an extension to attend to his sick mother, she approved a 12-hour extension (although the extension granted was apparently for 24 hours). McKinney testified that she did not know the procedure for extensions, but that Byers told her that her verbal approval was sufficient. McKinney testified that she approved the extension because of Burke's "wonderful" performance in the center. She testified that he was "constantly in contact" with her during the 72-hour period. She testified that Mr. Sayeed[1] told her that Burke tested positive for alcohol. McKinney said she looked at the test results and found that they were negative. McKinney testified that Sayeed requested an additional test, but that Wagnon refused. She testified that Burke was searched upon his return on June 1 and not allowed to leave during the next week. She testified that one of Burke's new roommates was on a relapse track after using methamphetamine while at home on leave. She testified that the beer attributed to Burke could have belonged to one of the other roommates. McKinney testified that she was fired on June 7, 2009, prior to coming in to work.

---

[1] McKinney did not testify regarding Mr. Sayeed's first name.

4

Burke testified that he asked for the extension on May 31 so he could accompany his mother to the hospital when she went to have a stent examined. Burke testified that he talked to Byers first, who told him to contact his primary counselor. He said he called his primary counselor to get approval, and she granted approval conditioned on getting Byers's verbal approval. Burke said that he saw paperwork showing that his breath test on June 1 showed negative for alcohol—not positive. He said he requested a retest after hearing it reported as positive and, upon being denied the retest, filed a grievance.

Burke testified that he takes antidepressants and a strong sleeping pill at night. He said he was told to report for testing late on June 6, which he passed, but that the sleeping pill would explain why he was weaving and slurring his words. He testified that the beer cans were not his, that they belonged to his roommates, some of whom were on relapse track.

Burke called Posten, his probation officer, on June 17, 2009. Posten testified that she told him that a warrant was out for his arrest and that he needed to turn himself in. She testified that Burke told her he could not turn himself in for at least a week because he was in Atlanta, Georgia. At trial, Burke admitted that he lied to Posten about being in Atlanta to stave off arrest. He said he was working and trying to get enough money to hire an attorney. Burke was arrested on or about June 26, 2009, in Rockdale, Texas. He testified that he had learned his lesson, had learned from the treatment, and had no intention of "messing up" this last chance.

The trial court concluded that the State proved that Burke violated the terms of his community supervision as alleged, namely that he was unsuccessfully discharged from Abode because he failed to abide by its rules and regulations.

5

We find no abuse of discretion. Burke was undisputedly discharged unsuccessfully from Abode on grounds that he failed to abide by its rules and regulations. As for the validity of the charge that he failed to comply with Abode's rules and regulations, the trial court was faced with conflicting evidence. It had to make a credibility choice, and evidently chose to believe Wagnon and Posten. We cannot say that the choice is not supported by the record. With that implicit credibility choice made, the preponderance of the evidence supports revocation. We cannot say that the trial court abused its discretion by revoking Burke's term of community supervision.

Burke next contends that the trial court erred by failing to give him credit for time served at the SAFPF facility before he went to Abode. The relevant statute provides as follows:

> In all criminal cases the judge of the court in which the defendant is convicted shall give the defendant credit on the defendant's sentence for the time that the defendant has spent:
>
> . . . .
>
> (2) in a substance abuse treatment facility operated by the Texas Department of Criminal Justice under Section 493.009, Government Code, or another court-ordered residential program or facility as a condition of deferred adjudication community supervision granted in the case if the defendant successfully completes the treatment program at that facility.

Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (West Supp. 2009). Burke undisputedly successfully completed his SAFPF program. He contends that he is entitled to credit for time served in the TDCJ-run SAFPF. The State contends, however, that he is not eligible for credit because he was on standard community supervision, and section 2(a)(2) of article 42.03 applies only to persons placed on deferred adjudication community supervision.

6

"When interpreting a statute, we look to the literal text of the statute for its meaning, and we ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous." *Badgett v. State*, 42 S.W.3d 136, 138 (Tex. Crim. App. 2001). When the language of a statute is ambiguous, we may look to its legislative history as an aid in interpreting the statute. *See Tovar v. State*, 978 S.W.2d 584, 586 (Tex. Crim. App. 1998).

The statute does not make plain whether credit for time served may be granted to defendants on standard or post-adjudication (not deferred adjudication) community supervision who successfully complete a treatment program at a TDCJ-run SAFPF. Burke argues that Section 2(a)(2) of article 42.03 should be read disjunctively to require giving credit for time served to defendants on standard community supervision who successfully complete a treatment program at a TDCJ-run SAFPF. Under that reading, defendants on deferred-adjudication community supervision who complete another court-ordered residential program or facility as a condition of community supervision would be entitled to credit for time served. The State insists, however, that the statute offers alternative means of earning good-time credit only to probationers whose adjudication was deferred.

The legislative history is not expressly dispositive. Two stated goals of the statute—to give incentives to offenders to complete treatment programs and to ease overcrowding in prisons[2]—are likely better served by granting credit to all types of probationers. The House

---

[2] The fiscal note provides as follows:

Several provisions of the bill would also specify conditions in which a judge shall

Research Organization's bill analysis, however, only contemplates that courts applying the statute will extend credit to defendants who are on deferred-adjudication community supervision.[3] Other statements in the house committee report are inconclusive.[4] The last sentence of the excerpt from

> give a defendant credit on the defendant's sentence for the time that the defendant has spent in jail or a substance abuse treatment facility, if the defendant successfully completes the treatment program. These provisions could result in reduced time served in correctional populations depending on the extent to which the provisions are utilized; however such reductions are not included in this analysis.

Fiscal Note, Tex. H.B. 1678, 80th Leg., R.S. (2007).

The house committee wrote the following analysis:

> CSHB 1678 also aims to increase incentives for offenders to successfully complete substance abuse programs and reduce the time offenders spend incarcerated by requiring judges to give defendants credit for time served successfully completing a treatment program in a Substance Abuse Felony Punishment Facility or other court-ordered residential program or facility.

House Comm. on Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).

[3] The house research organization's report provided as follows:

> CSHB 1678 would require judges to give defendants on probation as a condition of deferred adjudication credit against their sentences for time spent in a substance abuse treatment facility or another court-ordered residential program or facility if they had successfully completed the program. To defendants whose probation was revoked, judges also would have to give credit for time spent in the same facilities if the defendant successfully completed the program.

House Research Organization, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).

[4] The house committee on corrections provided the following analysis:

> This bill provides that a judge shall grant certain defendants credit on their sentence for the time that they spent in a Substance Abuse Felony Punishment Facility (SAFPF) or other court-ordered residential program or facility if they successfully completed the treatment program at that facility. This credit would apply to defendants who successfully completed the program as a condition of deferred

8

the House committee's bill analysis quoted in footnote 4 might be read to support extending credit to all probationers where it states that "[t]his credit would also apply to defendants who successfully completed the program while on community supervision, but were revoked and subsequently required to serve time in a state jail felony facility or prison." House Comm. on Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007). In context, however, that statement follows a sentence that expressly discusses only defendants who successfully complete a program as a condition of their deferred-adjudication community supervision. *Id.* The limited scope of the sentence that discusses only defendants whose adjudication is deferred may also implicitly color this subsequent reference to defendants who complete a program while on "community supervision." *See id.*

Although neither the language of the statute nor the bill analyses provides an express answer, we conclude that the legislature intended to require courts to give credit for time served only to defendants serving a term of deferred-adjudication community supervision. The bill analyses are mostly inconclusive, but the one analysis to take a clear position—the House Research Organization's analysis—does so in favor of the conjunctive reading that requires credit be given only to defendants on community supervision whose adjudication was deferred. House Comm. on

---

adjudication community supervision between the time they were granted deferred adjudication and their sentence, regardless if the defendant is to be sentenced to prison or a state jail felony facility. This credit would also apply to defendants who successfully completed the program while on community supervision, but were revoked and subsequently required to serve time in a state jail felony facility or prison.

House Comm. on Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).

Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007). While not expressly excluding the grant of time credit to defendants on standard community supervision, the House Research Organization does not mention that possibility. This interpretation is consistent with the somewhat less strained reading of the statute. The conjunctive reading promoted by the State requires giving credit for time served to deferred adjudication probationers only, but does so regardless of the type of facility in which they serve their time. The disjunctive reading promoted by Burke requires giving credit to standard probationers for time served in TDCJ-run facilities only, but allows deferred-adjudication community probationers to get credit regardless of the type of facility in which they serve their time. Reading the statute as distinguishing among type of probationers to determine when credit must be given is less of a strain than reading it as distinguishing among types of facilities—but only for one type of probationer—to determine when credit is due. We conclude that the subsection at issue permits giving credit for time served for successfully completing an SAFPF only to persons serving deferred-adjudication probation. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(2).

Affirmed.

_____

G. Alan Waldrop

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: June 25, 2010

Do Not Publish